IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **THOMAS H. REED, JR. & LORE REED** | : | |
| 805 Topper Street | : | |
| York, PA 17402 | : | |
|       **Plaintiffs** | : | **Civil Action No. 03 CV 360** |
| | : | |
| **v.** | : | |
| | : | |
| **JAMES F. KNOTT REALTY GROUP** | : | **Jury Trial Demanded** |
| Serve: Ronald P. Fish, Resident Agent | : | |
|     300 E. Lombard Street | : | |
|     Baltimore, MD 21202 | : | |
| | : | |
| **and** | : | |
| | : | |
| **JAMES F. KNOTT PROPERTY** | : | |
| **MANAGEMENT COMPANY** | : | |
| Serve: Ronald P. Fish, Resident Agent | : | |
|     300 E. Lombard Street | : | |
|     Baltimore, MD 21202 | : | |
| | : | |
| **JAMES F. KNOTT DEVELOPMENT** | : | |
| **COMPANY** | : | |
| Serve: Ronald P. Fish, Resident Agent | : | |
|     300 E. Lombard Street | : | |
|     Baltimore, MD 21202 | : | |
| **and** | : | |
| | : | |
| **YELLOW BRICK ROAD LIMITED** | : | |
| **PARTNERSHIP** | : | |
| Serve: Alan Harnik, Resident Agent | : | |
|     3418 University Place | : | |
|     Baltimore, MD 21218 | : | |
|       **Defendants** | : | |

## PLAINTIFFS' RESPONSIVE BRIEF TO DEFENDANTS' MOTION

## FOR SUMMARY JUDGEMENT

Plaintiff's respectfully submit the following Memorandum in Support of Opposition to

Defendant's for Summary Judgment.

## STATEMENT OF FACTS

The statement of facts of the defendants are accepted as a partially correct but incomplete statement of facts. In addition thereto, plaintiffs file the affidavits of Steve Shields, Randy Mitzel, and Bobby Gladfelter. These were fellow workmen with the plaintiff. The identity of these persons have been provided to the defendants, at least in part. See the attached Answers to Interrogatories of Defendants dated July 25, 2002 wherein the identity of Steve Shields and Bobby Gladfelter, together with their addresses and phone numbers where provided to defendants by plaintiffs in Answers to Interrogatories #4.

Plaintiffs simultaneously file herewith a Motion for Extension of Time for discovery so as to fully flush out the facts from these individuals. Finally the plaintiffs have requested that these depositions take place by letter dated October 21, 2003. Additionally, at the conclusion of defendant's corporate designee witness on October 24, 2003, plaintiffs requested the deposition of James F.Knott because he appeared to be the only person who could speak authoritatively as to who had responsibility for what as to all of the Knott Enterprises.

The affidavit of Steve Shields indicates that he was an employee with Tom Reed at Keystruct Builders and that he knew that it had snowed several days prior to Tom Reed's fall on February 8, 2000 and that there was still snow and ice in the parking lot area where Tom Reed fell, including the date Tom Reed fell, and he had overheard other workmen commenting to the Knott Realty supervisor who had been walking around the

premises on previous days. Steve Sheilds commented to a Knott Realty supervisor about the difficulty in walking because of the patches of ice and he asked that something be done about it. He noted that after Tom Reeds fell the same Knott Realtor supervisor he had spoken to on previous occasions was spreading salt and ice melt around the area where Tom Reed fell. Mr. Shields recalled other employees asking on many prior occasions to do something about the patches of ice.

Randy Mitzel was an employee of KLK Welding, he was another construction workers at the site of where repairs were being made. Randy Mitzel was aware that it had snowed several days before and he knew that snow and ice remained on the paved area was especially difficult during the morning hours and he overheard workmen talking amongst themselves about the icy conditions. He recalled his supervisor, Tom Clark commenting to him and other workers that someone may get hurt because of the icy conditions and it needed to be taken care of. On the day Tom Reed fell, Randy Mitzel recalls having problems with his balance because of the icy conditions and he observed a Knott Realty person walking around, after Tom Reed fell, spreading salt with a salt spreader and it was the same man that he had seen on prior occasions and who had been warned about the icy conditions.

Finally, we have the affidavit of Bobby Gladfelter, the supervisor of Tom Reed. Bobby Gladfelter was aware that it had snowed several days prior to Tom Reeds fall. He observed ice and commented to one of the supervisors of Knott Realty that they remember having problems with patches of ice and asked that something be done about it. Prior to the date of Tom Reeds fall, Bobby Gladfelter had told the Knott Realty supervisor that the parking lot was difficult because of the patches of ice and

3

something had to be done about it.

# ARGUMENT

The affidavits of Randy Mitzel, Steve Shields and Bobby Gladfelter, collectively, establish prior problems with icy patches on the parking lot area that workmen complained about to a Knott Realty person. The men had difficulty walking in the parking lot area because of the icy patches and put Knott Realty on notice and indeed Ask that the problem be resolved. While Knott Realty was not the owner, they were the manager of the premises and could not delegate away knowledge that clearly put them on notice the premises they were responsible for managing presenting a hazardous condition to workmen.

It would appear that the defendant has created an corporate octopus insofar as there is a number of different entities for different purposes. In the deposition of Steven A. Enders, taken October 24, 2003, he identified James S. Knott Property Management, Inc. as the entity who had the role of providing maintenance for the property. In this captioned lawsuit, James F. Knott Property Management, Inc. is the first plaintiff. Furthermore on page eight, when I asked Steven Enders who maintained the Yellow Brick Road property, he indicated that someone from James F. Knott Property Management, Inc. would maintain it. When I asked who would speak for James F. Knott Property Management, Inc. about their roll in maintaining the property at the Yellow Brick Road, he indicated that Dennis Gray, the vice-president would and would not be able to answer any questions with respect to the year 2000. He indicated it could possibly be a Timothy Hastings but he didn't know.

This case is very unusual because of the corporate structure where different tasks are assigned to specific Knott corporations or entities. Counsel for the defendants acknowledge that on page four of the depositions of Enders transcript.

What is clear is that there is a James F. Knott Property Management, Inc. company that has responsibility for maintenance and that the workmen who were at the worksite could not and would not be expected to distinguish between the various Knott entities and simply refer to them collectively as Knott.

The deposition of Dennis McMaster was taken a second time on October 24, 2003. On Page 3 of his deposition, he indicates that he was driving a vehicle on a day to day basis in February 2000 and it was a James F. Knott construction vehicle. Dennis McMaster acknowledges on page 4 that he was at the premises on February of 2000 and that he called 911 as a result of Tom Reed's fall. Dennis McMaster notified James F. Knott Property Management, Inc. and they in turn called someone out to make a visual inspection and do what they needed to do. Dennis McMaster did in fact observe someone spreading salt and commented, on page 5 that it was, "probably one of the laborers for the property management company".

Defendant Knott Property Management, as manager of the property, owed a duty of care to Plaintiffs. Lloyd v. Bowles, 260 Md. 568, 273 A.2d 193 (1971; Rowley v. Baltimore, 305 Md. 456, 505 A.2d 494 (1986). It had a duty to keep the premises in a reasonably safe condition for the use of Plaintiff Thomas Reed.

Defendant points out in its Memorandum that Defendant may be deemed to have had constructive knowledge of the dangerous condition to which Plaintiff fell victim, if the dangerous condition existed for a legally sufficient

5

length of time before the accident. We have yet to see whether a jury decides that Defendant had a reasonable opportunity in terms of time in which to discover the danger and remove it. There is evidence that snow had fallen within a matter of days prior to the accident, that there still was some snow remaining in the general area, and that there had been no precipitation the day of the accident. A jury could reasonably infer from these facts that the ice had come from the snow and therefore had remained a danger for the several days since the snowfall, especially given that there is no evidence that anything other than precipitation was the ultimate source of the ice. This reasonable inference could support a conclusion by the jury that Defendant Knott had constructive knowledge of the dangerous condition, i.e. it had several days to check over the lot for ice that might endanger invitees, and did not remove the danger. Or, though it would seem speculative for it to do so, a jury might infer that the ice was unrelated to the snow, given that several days apparently had passed since the precipitation, and that the ice therefore must have formed from some other source. It thus might infer that Defendant Knott had sufficient time in which to discover the danger and remove it.

Either Knott had constructive knowledge or it didn't, and that knowledge helps establish liability. It is black letter law that in order for a summary judgment motion to prevail, it must be established that there is no genuine issue as to a material fact and that the movant is entitled to judgment as a matter of law.

6

## CONCLUSION

Here, it has been established that there <u>is</u> a genuine issue as to a material fact (how long the ice was on the ground and whether a named defendant had knowledge of it and a responsibility to remove it or ameliorate its danger). Indeed, that issue remains because it is not yet known which inference a jury will draw concerning that fact. Because either inference could reasonably be drawn from the evidence, it is not clear that Knott is entitled to summary judgment as a matter of law.

Date: _____

                                      Richard Oare, Esq.,
                                      Attorney for Plaintiffs
                                      1434 S. George Street
                                      York, PA  17403
                                      717-846-3000

## AFFIDAVIT

I, Randy Mitzel, do hereby certify and affirm that:

1.  I am an adult individual residing at 4343Walters Hatchery Road, seven Valleys, York County, Pennsylvania.

2.  Ii was an employee of KLK Welding in February of 2000 as a construction worker and we were working at the Yellow Brick Road facility doing work at Notes & Queries, one of the tenants in the Yellow Brick Road facility. ;

3.  I observed Tom Reed working there from time to time;

4.  It had snowed several days before Tom Reed's fall on 2/8/00 and there was still snow and ice there on that date;

5.  On several prior occasions, I observed ice on the paved area where we workmen had to walk to do our work, especially in the morning hours;

6.  The workmen would talk amongst themselves about the icy and cold conditions just about every day;

7.  I recall Tom Clark, my supervisor, commenting to me and others that someone might get hurt because of the icy conditions and that it needed to be taken care of;

8.  On the same day I almost lost my balance a couple of times;

9.  After Tom Reed's fall, I observed a Knott Realty person walking around and spraying salt on the ice where Tom Reed fell and while Tom Reed was waiting for the ambulance to arrive;

10. He got the salt from the back of his truck and was using a salt spreader and he was the same person I had seen at the place on prior occasions but never before had Ii seen him put down salt.

I, hereby certify that the above is a true and correct statement to the best of my knowledge, information and belief.

_____

RANDY MITZEL

## AFFIDAVIT

I, Steve Shields, do hereby certify and affirm that:

1. I am an adult individual residing at 819Prospect Street, York County, Pennsylvania.

2. Keystruck Builders employed me during February of 2000 as a construction worker and we were working at the Yellow Brick Road facility doing work at Notes & Queries, one of the tenants in the Yellow Brick Road facility. ;

3. I was a fellow employee with Tom Reed;

4. It had snowed several days before Tom Reed's fall on 2/8/00 and there was still snow and ice there on that date;

5. On several prior occasions, I observed ice on the paved area where we employees had to walk to do our work;

6. I commented to a Knott Realty supervisor who was walking around the parking lot that walking was difficult because of the patches of ice and asked that something be done about it;

7. Within moments of Tom Reeds fall I observed the same Knott Realty man I had spoken to on previous occasions, spreading salt or ice melt around where Tom Reed fell and other areas of the parking lot where there were ice patches;

8. I overheard other employees ask this man on prior occasions to do something about the patches of ice.

I, hereby certify that the above is a true and correct statement to the best of my knowledge, information and belief.

_____

Steve Shields

Reed #2/Pleadings/Shileds Affidavit

## AFFIDAVIT

I, Bobby Gladfelter, do hereby certify and affirm that:

1.  I am an adult individual residing at 16 Mobile Drive, Thomasville, York County, Pennsylvania.

2.  Keystruck Builders employed me during February of2000 and working at the Yellow Brick Road facility doing work at Notes & Queries, one of the tenants in the Yellow Brick Road facility. ;

3.  I was supervising the work for Keystruck and one of my employees was Tom Reed;

4.  It had snowed several days before Tom Reed's fall on 2/8/00;

5.  On several occasions, I observed ice on the parking lot area where me and other workmen had to walk to do our work;

6.  On the date of Tom Reed's fall, I did not witness the fall, but the conditions where the same on the parking lot that day as they were on prior days.

7.  Prior to the date of Tom Reed's fall, I commented to a Knott Realty supervisor that walking around the parking lot was difficult because of the patches of ice and asked that something be done about it;

I, hereby certify that the above is a true and correct statement to the best of my knowledge, information and belief.

_____
Randy Mitzel

Reed #2/Pleadings/Gladfelter Affidavit

**LAW OFFICES OF RICHARD OARE**                    *Richard Oare, Esquire*

*Admitted in MD & PA*

1434 South George Street
York, PA  17403                                    Peggy S. Welsh, Practice Assistant
Office:  (717) 846-3000                                 Douglas Thomas, Law Clerk
Fax:  (717) 846-3434                               *Sean E. Page, MSN, Nurse Consultant*

---

October 21, 2003

Jane Jensen Gerbes, Esquire
Law Offices of Ileen M. Ticer
200 International Circle, Suite 4100
Hunt Valley, MD  21030

Re:  Tom H. Reed, Jr., and Lori Reed v.
     James F. Knott Realty Group, et al.

Dear Jane:

I want to notify you of additional witnesses.  I intend this letter to serve as an informal addition to discovery served upon plaintiffs regarding witnesses for trial.  I want to add as fact witnesses Steve Schields, Randy Mitzel, Lee Clark and Bobby Glatfelter.  All of these are individuals who are working for Keystruct, Tom Reed's employer on the day of the accident, February 8, 2000.  These witnesses can testify as to the weather conditions on the days immediately proceeding the accident as well as the day of the accident and can also testify as to what efforts they observed regarding removal of ice, warnings about icy conditions, and observations made immediately post accident of a Knott employee respecting efforts to ameliorate the icy walking surface at or near the location where Tom Reed fell.

I am sure you will want to take their deposition and, therefore, invite you to give me a date and time when they can be disposed at your office in Hunt Valley.

Very truly yours,

Richard Oare

RO: kem
Cc:  Tom Reed
*RO/Reed.Gerbes.ltr.10.21.03*

---

*Limited Practice:  Personal Injury, Wrongful Death, Health Insurance Law*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THOMAS H. REED, JR. & LORI REED,<br>Plaintiffs | : <br> : <br> : | **Civil Action No. S0CV 874** |
| v. | : <br> : <br> : | |
| JAMES F. KNOTT CONSTRUCTION<br>COMPANY, INC. | : <br> : <br> : <br> : | **Jury Trial Demanded** |
| and | : <br> : | |
| NOTES & QUERIES, INC. | : <br> : | |
| and | : <br> : | |
| HOLLINS & COMPANY, INC., | : <br> : <br> : | |
| Defendants | : | |

## PLAINTIFF THOMAS H. REED, JR.'S ANSWERS TO INTERROGATORIES PROPOUNDED BY DEFENDANT HOLLINS AND CO., INC.

### INTERROGATORIES

TO:      THOMAS H. REED, JR.

FROM:    HOLLINS & CO., INC.

You are requested to answer the following Interrogatories:

a.      These Interrogatories are continuing in character, so as to require you to file supplementary answers if you obtain further or different information before trial.

b.      Where the names or identity of a person is requested, please state full name, home address, and also business address, if known.

c.      Unless otherwise indicated, these Interrogatories refer to the time, place and circumstances of the occurrence mentioned or complained of in the pleadings.

| 1996 | Total: $36,601 | Taxable: $22,251 Georgia |
| 1997 | Total: $40,264 | Taxable: $22,764 Georgia |
| 1998 | Total: $37,681 | Taxable: $19,781 Georgia |
| 1999 | Total: $42,254 | Taxable: $24,054 Georgia/Pennsylvania |
| 2000 | Total: $49,842 | Taxable: $31,292 Pennsylvania |
| 2001 | Total: $56,193 | Taxable: $36,993 Pennsylvania |

4.    State the names, addresses and telephone numbers of all eyewitnesses to all or part of the occurrence and give the location of each witness at the time of the occurrence.

Stephen Shields, 819 Prospect Street, York, Pennsylvania 17403 (717-843-1865), from Keystruct

Bobby Gladfelter (292-7943), 5071 N. Salem, Dover, PA

Randy, (717-235-2463) 4386 Copenhauer Road, Glenville, PA

Tractor trailer driver

Dave (Superintendent for Knott Construction)

Bruce Traggorth

Mike Deprospina

Manager of Notes and Queries

2 ladies working in Notes and Queries

2 ambulance workers

5.    Name all persons who were at or near the scene, and who arrived at the scene within one hour after the occurrence.

Same answer as to number 4 above;

Thomas Garver, Keystruct project manager, R.D. #7 Box 7731, Spring Grove, Pennsylvania 17362 (717-225-1556), to fill out accident report;

A worker's compensation representative to take photographs, etc.

6. .    State the name and address of any person or persons, not heretofore mentioned, who have personal knowledge of facts material to the accident or to the injuries and damages alleged to be caused by this accident, including persons who investigated the cause and circumstances of the accident for you.

Penn National Insurance took photographs: Lisa Murr (717-230-8200);

Franklin Square Emergency Room personnel;

York Hospital personnel;

Dr. Douglas J. Hoffman;

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

.OMAS H. REED, JR. & LORI REED,  :
   Plaintiffs       :  Civil Action No.  S0CV 874

             :

v.              :

             :

JAMES F. KNOTT CONSTRUCTION  :  Jury Trial Demanded
COMPANY, INC.        :

             :

and            :

NOTES & QUERIES, INC.     :

and            :

HOLLINS & COMPANY, INC.,   :

   Defendants      :

# VERIFICATION

  I, Thomas Reed, hereby verify that the facts set forth in the within Answers to Interrogatories are true and correct to the best of my information, knowledge, and belief.

                _Thomas Reed_
                Thomas Reed
                Plaintiff

DATED: 7-25-02

11

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THOMAS H. REED, JR.
AND
LORE REED
          Plaintiffs

    vs.                     CASE NO. 03-CV-360

JAMES F. KNOTT REALTY
GROUP, et al.

          Defendants

_____/

        The deposition of STEPHEN A. ENDRES was held on Friday, October 24, 2003, commencing at 11:15 A.M., at the Law Offices of Ileen M. Ticer, 200 International Circle, Suite 4100, Hunt Valley, Maryland, 21030, before Chuck Peppler, Notary Public.


APPEARANCES:

        RICHARD OARE, ESQUIRE
           On behalf of Plaintiffs

        JANE J. GERBES, ESQUIRE
           On behalf of Defendants


ALSO PRESENT:  DAVID J. MCMASTER


REPORTED BY:  Chuck Peppler

Stephen A. Endres - 10/24/03

6

1    A    That is not correct.
2    Q    Then please correct me.  Why did you list
3  these four entities?
4    A    You asked me who I worked for.
5    Q    You work for all four of these?
6    A    Yes.
7    Q    You're here today on behalf of which of
8  the four?
9    A    I honestly don't know.  I'm just here to
10  clear up who is who, who on that list, so to speak,
11  and what their relationship is to other things.
12    Q    I know there is also another entity called
13  Yellow Brick Road, Inc. or something close to that.
14  That they were the owner of the building where my
15  client fell back in the year 2000.  Do you have any
16  knowledge of Yellow Brick Road?
17    A    Yes.
18    Q    As I understand it, James F. Knott
19  Construction was hired by Yellow Brick Road to make
20  improvements on the building that Yellow Brick Road
21  owned because of tenant needs.  Is that a fair

7

1  statement?
2    A    Yes.
3    Q    James F. Knott Realty Corporation was the
4  property manager for that particular --
5    A    That would not be correct.  James F. Knott
6  Property Management, Inc. is the property manager.
7    Q    James F. Knott Property Management, Inc.
8  would be the property manager?
9    A    That's correct.
10    Q    What would be their role with respect to
11  maintenance activities at this location, if you know?
12    A    I mean, they maintain the property.
13  They're close with the owners.  There's an agreement
14  between the owner and property management.  I know it
15  because we collect the management fee and that's where
16  I'm involved, but they maintain the property for the
17  owner.
18    Q    James F. Knott Realty Corp would maintain
19  the properties for the owner?
20    A    James F. Knott Property Management.
21    Q    I'm sorry.  James F. Knott Property

8

1  Management would maintain the property for the owner?
2    A    Yes.
3    Q    What exactly, if you know, is their role
4  in property management for the owner?  What do they
5  do?
6    A    I don't know.  There are different
7  properties.
8    Q    For the Yellow Brick Road property?
9    A    I don't know that one in particular.
10    Q    Somebody from James F. Knott Property
11  Management would?
12    A    Yes.
13    Q    Who would I want to speak to from James F.
14  Knott Property Management about their role in
15  maintaining the property at Yellow Brick Road?
16    A    Dennis Gray, the vice president.
17    Q    Do you know how long Dennis Gray has been
18  the vice president or had other employment activity
19  with that company?
20    A    I would say approximately 18 months.
21    Q    So, he wouldn't be able to address any

9

1  questions which arose out of the year 2000, would he?
2    A    I don't think so, no.
3    Q    Do you know if there was anyone at James
4  F. Knott Property Management, Inc. who would have been
5  in some managerial role in the year 2000?
6    A    There was a manager at that time.
7    Q    Who was that?
8    A    I don't recall.  It depends on exactly
9  when in the year, because I know we changed managers
10  in that year.
11    Q    How about in the very first quarter of the
12  year?
13    A    That would be Timothy Hastings,
14  H-A-S-T-I-N-G-S.
15    Q    Is he still working for James F. Knott?
16    A    No.
17    Q    He's gone?
18    A    He's gone.
19    Q    Do you know where he's gone to?
20    A    Pennsylvania.
21    Q    Do you know where in Pennsylvania?

3 (Pages 6 to 9)

1

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THOMAS H. REED, JR.
AND
LORE REED
            Plaintiffs

        vs.                          CASE NO. 03-CV-360

JAMES F. KNOTT REALTY
GROUP, et al.

            Defendants
_____/

        The deposition of DAVID J. MCMASTER was

held on Friday, October 24, 2003, commencing at 11:40

A.M., at the Law Offices of Ileen M. Ticer, 200

International Circle, Suite 4100, Hunt Valley,

Maryland, 21030, before Chuck Peppler, Notary Public.


APPEARANCES:

            RICHARD OARE, ESQUIRE
                On behalf of Plaintiffs

            JANE J. GERBES, ESQUIRE
                On behalf of Defendants




REPORTED BY:  Chuck Peppler

Q    I have read your transcript.  I really can focus on just a few areas.  I'm going to be asking you questions with respect to February 8th, 2000 at Yellow Brick Road regarding the weather.

A    Okay.

Q    Do you know whether in February of 2000, you had a vehicle you utilized on a day-to-day basis?

A    That I personally utilized?

Q    Yes, sir.

A    Yes, a James F. Knott Construction vehicle.

Q    What kind?

A    A two-wheel drive pickup truck.

Q    Did you have on that truck any -- I'm going to use the term snow removal stuff.  By that, I mean, deicer, ice melt or similar, sand, gravel, anything.

A    From time to time I would.

Q    Did you have a device such as a salt spreader or similar?

A    No.

GORE BROTHERS Reporting & Video Co., Inc.
410-837-3027

Towson Reporting Company
410-828-4148

pany
4148

4

1    Q    You never had.  Okay.  How would you

2    spread whatever it was?  You told me what it was you

3    had on the truck, whether it was salt, whether it was

4    sand.  What was it?

5    A    From time to time, if I could get some

6    material for weight for the back of my truck, because

7    it was a two-wheel drive pickup.  I had four or five

8    bags of salt I would put in the back of that truck

9    just for weight purposes.

10    Q    Did you ever use it to spread?

11    A    No.

12    Q    On February 8th, 2000, after you observed

13    the injury to Mr. Reed, I understand you called in a

14    911.

15    A    Yes.

16    Q    Do you know whether after you observed

17    Mr. Reed, you spread some salt at various locations?

18    A    I didn't, but I placed a call to the

19    numbers when we have an emergency that I needed to,

20    once it was an emergency, which was my boss, the

21    project manager, the James F. Knott Property

Management, which was the property manager at that time. They in turn called someone out to just make a visual inspection of the building and do what they needed to do, that they felt necessary at the time.

Q    Did you observe anyone spreading salt around the area where Mr. Reed fell after he fell?

A    Yes.

Q    Who?

A    Probably one of the laborers for the property management company.

Q    Do you know who that would have been?

A    I don't recall the name, no.

Q    We're talking about James F. Knott Property Management, Inc., correct? I understand James F. Knott Property Management, Inc. sent somebody out to spread some salt.

A    Correct.

Q    It was a laborer?

A    Correct.

Q    Do you know who it was?

A    They sent their foreman out, which was a

# CERTIFICATE OF SERVICE

I, Richard Oare, hereby certify that I this date served a true and correct copy of the within <u>Plaintiffs' Responsive Brief to Defendants' Motion for Summery Judgment</u> upon all parties, through counsel, by electronic service as well as placing same in the U. S. Mail, First Class, Postage Pre-paid, addressed as follows:

**Jane Jensen Gerbes, Esquire**
LAW OFFICES OF ILEEN M. TICER
200 International Circle, Suite 4100
Hunt Valley, MD 21030
(for all defendants)

DATED:                                          Signed,


    A/s/@Richard Oare
RICHARD OARE, Esquire
Attorney for Appellant
1434 South George Street
York, Pennsylvania 17403
(717) 846-3000
# 029852